Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, March 07, 2011 4:07:55 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TINA KAY JONES, and | ) | Case No. 10-1935 |
| JASON MICHAEL JONES, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| TINA KAY JONES, and JASON | ) | |
| MICHAEL JONES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-125 |
| | ) | |
| CAPITAL ONE BANK (USA), N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Tina and Jason Jones (the "Debtors") filed this adversary proceeding against Capital One Bank (USA), N.A., seeking recovery for alleged pre-petition violations of W. Va. Code § 46A-2-128(e), which prohibits a debt collector from having any communication with a consumer whenever it appears that the consumer is represented by an attorney.

Capital One seeks to dismiss this adversary proceeding on the basis that it is a national bank, covered by the National Bank Act, which preempts the Debtors' alleged cause of action under § 46A-2-128(e).

1

## I. STANDARD OF REVIEW

In adjudicating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## II. BACKGROUND

As alleged in the Debtors' adversary complaint, before they filed bankruptcy they owed Capital One two unsecured debts. In June 2010, Capital One made a collection call to Mr. Jones, who gave notice to the representative that the Debtors had retained counsel and were filing for bankruptcy. From then until July 20, 2010, Capital One made repeated collection calls to the Debtors.

On July 20, 2010, the Debtors' bankruptcy counsel called Capital One to verify his representation of the Debtors and to request that Capital One stop contacting his clients. Counsel then faxed a letter to Capital One confirming his representation and instructing Capital One to cease all communications with the Debtors.

Subsequently, Capital One made several additional collection calls to the Debtors. The Debtors filed their Chapter 7 bankruptcy case on September 8, 2010, and filed this adversary proceeding against Capital One the same day.

## III. DISCUSSION

Capital One argues that it is a national bank association, covered by the National Bank Act, and this adversary proceeding must be dismissed on the basis that W. Va. Code § 46A-2-128(e) is preempted by the National Bank Act as previously determined by the District Court for the Northern District of West Virginia in *Lomax v. Bank of America, N.A.*, 435 B.R. 362 (N.D.W. Va. 2010); *Frye v. Bank of America, N.A.*, 3:10-cv-47, 2010 U.S. Dist. LEXIS 83969 (N.D.W. Va. Aug. 16, 2010); and *Padgett v. OneWest Bank, FSB*, 3:10-cv-08, 2010 U.S. Dist. LEXIS 38293 (N.D.W. Va. April 19, 2010).

As far back as 1819, the United States Supreme Court determined that the individual "States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the

operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819). One of the powers vested in the general government is the power to establish national banks. *Id.* at 424 ("[T]he act to incorporate the Bank of the United States is a law made in pursuance of the constitution, and is a part of the Supreme law of the land."). Today, the business activities of national banks are controlled by the National Bank Act, 12 U.S.C. § 1 *et seq.*, and regulations promulgated by the Office of the Comptroller of Currency. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007). Under the National Bank Act, banks may exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). One purpose of the National Bank Act is to "protect national banks against intrusive regulation by the states." *Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 561 (9th Cir. 2002).

This does not mean, however, that a national bank is not subject to state law: "national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the bank's functions." *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 248 (1944). Put another way, "[s]tates are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its power." *Watters*, 550 U.S. at 12. For example, the Comptroller of the Currency has determined that state laws regarding, among other things, contracts, torts, criminal laws, and the right to collect debts are "not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank's non-real estate lending powers." 12 C.F.R. § 7.4008(e).

More specifically, laws concerning the right to collect debts "typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the infrastructure that makes practicable the conduct of that business." 69 F.R. 1904, 1913 (Jan. 13, 2004). On the other hand, "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks." 12 C.F.R. § 7.4008(d)(1).

In this case, the Debtors' cause of action against Capital One arises under W. Va. Code § 46A-2-128(e), a debt collection statute, which states:

3

> No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . . .
>
> (e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

§ 46A-2-128(e).

Thus, the State of West Virginia has declared it an unfair or unconscionable method of debt collection for a debt collector to communicate directly with a consumer when it appears that the consumer is represented by an attorney. It both regulates how collections efforts by a debt collector are to be made, and preserves the integrity of the attorney-client relationship. It is a law of general applicability and does not target national banks. Thus, the issue is whether § 46A-2-128(e) obstructs, impairs, or conditions a national bank's ability to fully exercise its Federally authorized non-real estate lending powers.

In making this determination as to whether a state law obstructs, impairs, or conditions a national bank's lending powers, the District Court in *Lomax*, 435 B.R. at 369-70, applied the same preemption analysis for real estate lenders[1] under the National Bank Act as was used by the Office of Thrift Supervision for considering the preemptive effect of state laws to federal thrifts:

> When analyzing the status of state laws under [the Regulation], the first step will be to determine whether the type of law in question is listed in [the Regulation's illustrative examples of the types of state laws preempted]. If so, the analysis will end there; the law is preempted. If the law is not covered [by one of the illustrative examples], the next question is whether the law affects lending. If it does, then . . . the presumption arises that the law is preempted. This presumption can be reversed

---

[1] The Code of Federal Regulations has separate provisions dealing with the applicability of state law to a national bank's real estate lending activity and non-real estate lending activity. 12 C.F.R. §§ 7.4008(d), 34.4(a). Both provisions identically provide that "state laws that obstruct, impair, or condition a national bank's ability to exercise it Federally authorized . . . lending powers are not applicable to national banks." Consequently, the District Court's preemption analysis regarding a national bank's real estate lending powers in *Lomax*, 435 B.R. at 369-70, is equally applicable in this case dealing with the preemption analysis of a national bank's non-real estate lending powers.

4

only if the law can clearly be shown [to have, at most, only an incidental effect on lending operations.] Any doubt should be resolved in favor of preemption.

*Id.* (citing OTS, Lending and Investment, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)).

**A.    Illustrative Examples of Preempted State Law**

Under the preemption analysis set forth in *Lomax*, the court must first analyze W. Va. Code § 46A-2-128(e) in relation to the illustrative examples of preempted state laws in 12 C.F.R. § 7.4008(d)(2) to determine whether W. Va. Code § 46A-2-128(e) is the type of state law that is preempted. The examples are:

> (2) A national bank may make non-real estate loans without regard to state law limitations concerning:
>
> (i) Licensing, registration (except for purposes of service of process), filings, or reports by creditors;
>
> (ii) The ability of a creditor to require or obtain insurance for collateral or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;
>
> (iii) Loan-to-value ratios;
>
> (iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (v) Escrow accounts, impound accounts, and similar accounts;
>
> (vi) Security property, including leaseholds;
>
> (vii) Access to, and use of, credit reports;
>
> (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;
>
> (ix) Disbursements and repayments; and
>
> (x) Rates of interest on loans.

§ 7.4008(d)(2)(i-x).

5

None of these examples specifically relate to state laws concerning debt collection or preserving the integrity of the attorney-client relationship, which form the basis for W. Va. Code § 46A-2-128(e). Indeed, in *Lomax*, 435 B.R. at 371, dealing with nearly identical examples in 12 C.F.R. § 34.4(a) concerning real estate lending, the District Court implicitly found that none of the above ten counterparts to § 7.4008(d)(2), as reflected in § 34.4(a), specifically prohibited the application of W. Va. Code § 46A-2-128(e).[2] The court notes that § 46A-2-128(e) does not purport to affect any type of repayment schedule or terms of credit; rather, it merely seeks to regulate the method by which a debt collector may contact a consumer when it appears the consumer is represented by an attorney.

### B.   W. Va. Code § 46A-2-128(e) Affects Lending

Finding that § 46A-2-128(e) is not a state law that falls within one of the specifically enumerated examples of preempted state law does not end the court's preemption inquiry. Under the second step of analysis set forth in *Lomax*, a state law will nevertheless be preempted if it obstructs, impairs, or conditions a national bank's ability to fully exercise its federally authorized non-real estate lending powers. 12 C.F.R. § 7.4008(d)(1). As stated by *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009), "the level of 'interference' that gives rise to preemption under the NBA is not very high."

In *Lomax*, 435 B.R. at 371, the District Court determined that the imposition of W. Va. Code § 46A-2-128(e) obstructs, impairs, or conditions a national bank's ability to fully exercise its federally authorized lending powers:

> [T]his Court finds that the undertaking required by the language "appears" [in § 46A-

---

[2] In *Lomax* the District Court noted that specifically prohibited state laws included those that affected the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'" *Lomax*, 435 B.R. at 369 (citing 12 C.F.R. § 34.4(a)(10)). The Court concluded that W. Va. Code § 46A-2-128(e) was preempted by the National Bank Act because "restricting to whom [a national bank] may communicate regarding its mortgage loans implicates the '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages' by national banks." *Id.* at 371.

With regard to non-real estate lending, the Comptroller of the Currency did not include the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, [unsecured loans]" as a specific example of the type of activity that a national bank could engage in without regard to state law. *Cf.* 12 C.F.R. § 34.4(a)(1-14), *with* § 7.4008(d)(2)(i-x).

6

> 2-128(e)] would more than incidentally affect lending. In so finding, this Court concludes that the FDCPA's application to BofA, if at all, has no effect on the issue of preemption. The FDCPA prohibits a debt collector from communicating with a debtor it "knows" is represented by an attorney, whereas the WVCCPA prohibits communication whenever it "appears" that a consumer has attorney representation. *Compare* 15 U.S.C. § 1692c(a), *with* W.Va. Code § 46A-2-128(e). Pursuant only to the latter provision would a debt collector violate the law because it should have known, from appearances, that a consumer was represented by an attorney. Therefore, this Court finds that W.Va. Code § 46A-2-128(e) imposes a heavier burden than the FDCPA, and thus, more than incidentally affects lending. As such, W.Va. Code § 46A-2-128(e) is preempted by the NBA.

*Lomax*, 435 B.R. at 371.

In *Padgett v. OneWest Bank, FSB*, 3:10-cv-08, 2010 U.S. Dist. LEXIS 38293 (N.D.W. Va. April 19, 2010), the District Court found to be "more accurate" the lender's description of the burden imposed upon it by W. Va. Code § 46A-2-128(e):

> First, the federal savings bank must establish guidelines or otherwise train its employees in how to comprehend and then note for the file when it "appears" that there is attorney representation. It must then develop procedures for changing its communications process in connection with servicing the mortgage loan, including its procedures for sending out monthly statements and all other correspondence as well as making telephonic communications. If the federal savings bank has not been given the attorney's name and address, the federal savings bank must then take steps to try and ascertain this information because it may not, under the WVCCPA, communicate directly with a debtor . . . if the federal savings bank can "easily ascertain" such information. Finally, the federal savings bank runs the risk of falling afoul of the WVCCPA if it does not expend the amount of effort to ascertain such information that a trier of fact might consider to fall within the scope of "easily ascertaining" such information.

*Padgett*, 2010 U.S. Dist. LEXIS at *26-27.

The type of activity described in *Lomax* and *Padgett* concerns the servicing of a loan. Servicing a loan generally entails sending billing statements and keeping track of payments, a central component of loan administration, which also includes delinquency follow-up procedures and contact with borrowers of the type that may be protected by West Virginia law under W. Va. Code § 46A-2-128(e).

Based on the District Court's opinions in *Lomax* and *Padgett*, as well as this court's own analysis, W. Va. Code § 46A-2-128(e) obstructs, impairs, or conditions a national bank's non-real

7

estate servicing / loan administration activities because § 46A-2-128(e) attempts to govern how a national bank may engage in debt collection activity within an individual state, and subjects a national bank to liability for violating a state statute. As a debt collection law, § 46A-2-128(e) does not establish the infrastructure that makes practicable the business of banking; rather, as applied to a national bank, it is an impermissible attempt to regulate the manner in which the business of banking is carried out. State consumer protection law is not an area in which the states have traditionally been permitted to regulate national banks. *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1016 (E.D. Cal. 2002); *see also* Fed. Reg. Vol. 69, No. 8, p. 1912 (Jan 13, 2004) ("The standards set forth in § 7.4008(b) and (c), plus an array of Federal consumer protection standards, ensure that national banks are subject to consistent and uniform federal standards, administered and enforced by the OCC, that provide strong and extensive customer protection and appropriate safety and soundness-based criteria for their lending activities.").[3]

**C.     Rebutting the Presumption of Preemption**

Finding that W. Va. Code § 46A-2-128(e) affects a national bank's non-real estate lending powers, the presumption that § 46A-2-128(e) is preempted can be reversed, under the final step of the preemption inquiry, if it can be shown that § 46A-2-128(e) falls within one of the categories of state law that the Comptroller of the Currency has determined to be applicable to national banks to the extent that the state law only incidentally affects lending.

More specifically, the Comptroller determined that state laws regulating "the right to collect debts" are applicable to national banks "to the extent that they only incidentally affect the exercise of a national bank's non-real estate lending powers." 12 C.F.R. § 7.4008(e); *see also Monroe Retail, Inc.*, 589 F.3d at 281 (6th Cir. 2009) ("We find that the NBA does not preempt general state laws governing the rights of all entities, not just Banks, to collect debts."); 69 F.R. 1904, 1913 (Jan. 13,

---

[3] The Comptroller has identified the existing network of Federal laws applicable to national banks that protect consumers as including: the Truth in Lending Act, 15 U.S.C. § 1601 et seq., the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et seq., the Fair Housing Act, 42 U.S.C. 3601 et seq., the Home Mortgage Disclosure Act, 12 U.S.C. 2801 et seq., the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq., the Truth in Savings Act, 12 U.S.C. 4301 et seq., the Consumer Leasing Act, 15 U.S.C. 1667, and the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq.

2004) (stating that laws concerning the right to collect debts "typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the infrastructure that makes practicable the conduct of that business.").

An important distinction exists, however, between a state law governing a *right* to collect a debt and a state law on debt collection that governs *how* a national bank may act to collect that debt. Capital One offered Interpretative Letter #1082, dated May 17, 2007, from the Comptroller of Currency dealing with a national bank's overdraft practices.[4] In the Letter, the Comptroller stated that the application of state laws on the right to collect debts "pertains to the exercise of a bank's right to recover a debt, not to the means the bank uses to pursue that right." Footnote 12 of the Letter further explains:

> [S]tatutes and decisional law regulating debt collection activity are not what the rule captured. Rather the commercial law framework essential for conducting any business, including the business of banking, continues to apply to the operations of national banks. Indeed, to determine otherwise would contradict the principle underlying the OCC's rule that *how* national banks elect to collect their debts (as opposed to whether a *right* to collect a debt exists) is subject to federal control.

(Document No. 125, Ex. 1, p.6 n.12) (emphasis in original).[5]

---

[4] In *Monroe Retail, Inc.*, 589 F.3d at 281-82, the court explained the weight afforded to interpretative letters, which depends on "'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which gave it power to persuade, if lacking power to control'" (citation omitted).

[5] The language of footnote 12 stems from statements made in the Federal Register, 69 F.R. 1904, 1912 (Jan. 13, 2004):

> One category of state law included in the proposed list of state laws generally not preempted was ''debt collection.'' Consistent with Supreme Court precedents addressing this type of state law, we have revised the language of the final rule to refer to national banks' ''right to collect debts.''

*Id.* (citing *Nat'l Bank v. Commonwealth*, 76 U.S. 353, 362 (1869) (national banks ''are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law.'') (emphasis added)); *see also McClellan*, 164 U.S. 347, 356–57 (1896) (quoting *Nat'l Bank v. Commonwealth*).

9

Here, W. Va. Code § 46A-2-128(e) is not a state statute that governs whether a creditor has a right to collect a debt; rather, § 46A-2-128(e) governs how a debt collector is to collect a validly owing debt when it appears the debtor is represented by an attorney.  Consequently, § 46A-2-128(e) is not a state statute that falls within the "right to collect a debt" exception to federal preemption stated in 12 C.F.R. § 7.4008(e)(4).  To the extent a determination is necessary of whether W. Va. Code § 46A-2-128(e)'s interference with a national bank's non-real estate lending activities is something more than incidental, the court finds that such interference is more than incidental for the reasons articulated by the District Court in *Lomax* and *Padgett.*  A contrary finding would mean that a national bank would have to change its debt collection practices depending on individual state law when that debt collection activity is not otherwise prohibited by federal law.

## IV. CONCLUSION

For the above stated reasons, the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 granting Capital One's motion to dismiss.